## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **MICHELLE MOORE,** | * | |
| **Plaintiff,** | * | |
| | * | **Civ. No. MJM-23-152** |
| v. | * | |
| **STATE OF MARYLAND,** *et al.*, | * | |
| **Defendants.** | * | |

\* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Plaintiff Michelle Moore ("Plaintiff") filed this civil action under the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, and the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann. State Gov't §§ 20-606 and 20-1001 *et seq.*, against the State of Maryland and the Maryland Department of General Services ("DGS") (collectively, "Defendants") alleging failure to provide reasonable accommodations, harassment, and retaliation. This matter is before the Court on Defendants' Motion for Summary Judgment, ECF No. 43, and Plaintiff's Cross-Motion for Partial Summary Judgment, ECF No. 54. The motions are fully briefed and ripe for disposition. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons set forth below, the Court shall grant Defendants' motion and deny Plaintiff's.[1]

---

[1] Also pending is Plaintiff's Consent Motion to Modify the Scheduling Order, ECF No. 62, which is granted *nunc pro tunc*.

## I.    BACKGROUND

### A.  Factual Background

Plaintiff was employed by DGS from November 21, 2018, through May 7, 2021, ECF No. 43-4 (Def. Ex. 1, Moore Dep.) at 14:2–8, as a Grants Administrator (Administrator III), ECF No. 43-5 (Def. Ex. 2, DGS offer letter). Ms. Shirley Kennedy was Plaintiff's direct supervisor until September 21, 2020. ECF No. 43-4 at 6:14–20.

On December 6, 2019, Plaintiff met with Ms. Kennedy to discuss workload issues. *Id.* at 46–54. Following their discussion, Ms. Kennedy agreed to assign the marginal task of drafting grant agreements to others in the unit to help lighten Plaintiff's workload. *Id.* at 49:12–54:1. Ms. Kennedy held a team meeting on December 9, 2019, to discuss the new assignment plan. *Id.*

On January 22, 2020, Plaintiff informed the DGS Human Resources Director and Americans with Disabilities Act ("ADA") Coordinator, Ms. Tonya Sturdivant, that she had a disability and sought to begin the process of requesting reasonable accommodations pursuant to the ADA. ECF No. 43-7 (Def. Ex. 4, email from Plaintiff to Ms. Sturdivant). In her deposition, Ms. Sturdivant explained that only she had the authority to approve ADA accommodations. ECF No. 43-6 (Def. Ex. 3, Sturdivant Dep.) at 21:1–8. In a letter dated May 19, 2020, Ms. Sturdivant summarized the accommodations and workload adjustments that had been discussed and agreed to by DGS ("Accommodations Agreement"). ECF No. 43-8 (Def. Ex. 5). The Accommodations Agreement included the "[r]emoval of marginal tasks" and explained that "[w]ork assignments have been broken down to have marginal tasks performed by other team members . . . ." *Id.*

During the COVID-19 emergency, from March 14, 2020, through June 30, 2021, Plaintiff conducted most of her work remotely by telework and work-related communications mostly by email.

On September 14, 2020, Ms. Kennedy sent Plaintiff an email requesting that Plaintiff "prepare the grant agreement listing St. Elizabeth School Foundation, Inc., as beneficiary." ECF No. 54-9 (Pl. Ex. 9, emails between Ms. Kennedy and Plaintiff). Plaintiff responded, in part, "[M]arginal tasks were removed from my duties starting December 2019. As you may recall, drafting grant agreements w[as] removed from my duties as an accommodation and the revision was reflected in my new MS 22." *Id.* Approximately 20 minutes later, Ms. Kennedy replied, asking whether Plaintiff completed and sent the grant agreement to the grantee as requested.[2] *Id.*

Plaintiff took leave under the Family Medical Leave Act ("FMLA") from September 15 through September 18, 2020. ECF No. 54-14 (Pl. Ex. 14, Plaintiff's timesheet). Ms. Kennedy stopped working for DGS on September 21, 2020, and was on leave from September 21, 2020, until her last day of employment on February 26, 2021. ECF No. 43-16 (Def. Ex. 13, Ms. Kennedy's timesheet). The last time that Plaintiff and Ms. Kennedy worked together for DGS was on September 21, 2020. *Id.*; ECF No. 54-14.[3]

On October 13, 2020, Plaintiff filed a formal complaint of discrimination with DGS centered largely on the allegation that Ms. Kennedy's September 14, 2020, email improperly assigned Plaintiff the task of drafting a grant agreement. ECF No. 43-9 (Def. Ex. 6, Plaintiff email

---

[2] Plaintiff states in an unverified interrogatory response that, in September 2020, Ms. Kennedy threatened to terminate Plaintiff's employment if she refused to accept the assignment of "drafting" grant agreements. ECF No. 54-8 (Pl. Ex. 8) at 11. Because, the interrogatory response is uncertified, *see id.* at 17 (declaration page with a blank signature line for Plaintiff), the Court declines to accept it as competent evidence in opposition to Defendant's summary judgment motion. *See Kincaid v. Anderson*, 681 F. App'x 178, 181 (4th Cir. 2017) ("Although interrogatory answers are appropriate materials for summary judgment purposes, Fed. R. Civ. P. 56(c)(1)(A), Kincaid's responses here were not properly attested, and the district court did not abuse its discretion in refusing to accept them."); Fed. R. Civ. P. 33(b)(3),(5) (requiring each interrogatory to be answered "in writing under oath" and signed by "[t]he person who makes the answers").

[3] Plaintiff states in an unverified interrogatory response that "Ms. Kennedy made about 10–15 [assignments drafting grant agreements] on a weekly basis after 2020 . . . ." ECF No. 54-8 (Pl. Ex. 8) at 7. Apart from its lack of proper attestation, this statement, as written, is impossible to square with the undisputed fact that Ms. Kennedy stopped working at DGS on September 21, 2020. *See* ECF No. 54 at 16 (Plaintiff's admission).

to Ms. Sturdivant); ECF No. 43-10 (Def. Ex. 7, internal discrimination complaint). In her

complaint, Plaintiff alleged that Ms. Kennedy violated the Accommodations Agreement when Ms.

Kennedy continued to require Plaintiff to draft grant agreements. ECF No. 43-10. She alleged that

Ms. Kennedy's actions continued a pattern of discrimination and harassment and amounted to

retaliation. *Id.* Specifically, Plaintiff alleged, Ms. Kennedy's acts included "unfair ratings on

[Plaintiff's] performance evaluations, demeaning comments, and mistreatment." *Id.*

Plaintiff took a combination of FMLA leave, holiday, sick leave, annual leave, and personal

leave from December 7, 2020, through March 23, 2021. ECF No. 54-14 (Pl. Ex. 14, timesheet).

Plaintiff resigned from employment on April 22, 2021, effective May 7, 2021, and May 7 was her

last day of work at DGS. *Id.*; ECF No. 43-17 (Def. Ex. 14, resignation letter).

**B. Procedural Background**

On February 11, 2021, Plaintiff filed a charge alleging disability discrimination and

retaliation with the Maryland Commission on Civil Rights ("MCCR"). ECF No. 43-11 (Def. Ex.

8, MCCR complaint). The following year, the MCCR administratively closed Plaintiff's

complaint. ECF No. 43-12 (Def. Ex. 9, MCCR letter closing charge). Plaintiff objected to the

closing of the investigation, but in April 2022, the MCCR upheld the closure pursuant to its

governing regulations. ECF No. 43-13 (Def. Ex. 10, MCCR letter upholding administrative

closure). Then, on May 14, 2022, the MCCR issued Plaintiff a notice of her right to sue. ECF No.

43-14 (Def. Ex. 11, right-to-sue letter).

Plaintiff filed her Complaint with the Circuit Court for Baltimore City, Maryland on

August 22, 2022, ECF No. 2, and on January 20, 2023, Defendants removed her Complaint to this

Court, ECF No. 1. In her Complaint, Plaintiff asserts claims for failure to accommodate (Counts I

and IV), harassment (Counts II and V), and retaliation (Counts III and VI), in violation of the

Rehabilitation Act and MFEPA, respectively. ECF No. 2. Plaintiff seeks compensatory damages, backpay, and attorney's fees. *Id.* at 19. On March 21, 2023, Defendants filed an Answer to Plaintiff's Complaint. ECF No. 9.

The parties completed discovery, and on January 16, 2025, Defendants filed a Motion for Summary Judgment, requesting summary judgment on all claims. ECF No. 43. Plaintiff filed a response in opposition to Defendant's motion and Cross-Motion for Partial Summary Judgment on March 21, 2025, ECF No. 48, and filed a corrected motion a few days later, ECF No. 54. Plaintiff seeks partial summary judgment as to liability on Counts I, III, IV, and VI, alleging violations of the Rehabilitation Act and MFEPA for failure to provide reasonable accommodations and retaliation. *Id.* Plaintiff does not appear to contest Defendants' entitlement to summary judgment on her harassment claims in Counts II and V. *See* ECF No. 51 (Plaintiff's proposed order); ECF No. 54 (no argument in opposition to Defendants' request for summary judgment on Plaintiff's harassment claims). Defendants filed a response in opposition to Plaintiff's motion and reply in support of their own motion, ECF No. 58, and Plaintiff filed a reply in support of her own motion, ECF No. 63.

## II.    STANDARD OF REVIEW

A court may grant a party's summary judgment motion under Rule 56 if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020). A fact is "material" if it "might affect the outcome of the suit under the governing law[,]" and a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986) (emphasis removed); *see also Raynor*

*v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016). A party can establish the absence or presence of a genuinely disputed fact through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). The court must view all the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmovant, *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), but the court is not permitted to weigh the evidence, make credibility determinations, or decide the truth of disputed facts. *Anderson*, 477 U.S. at 249.

"The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine dispute of material fact." *Med. Mut. Ins. Co. of N. Carolina v. Gnik*, 93 F.4th 192, 200 (4th Cir. 2024) (citing *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003)). The burden then shifts to the nonmovant to "set forth specific facts showing that there is a genuine issue for trial." *Bouchat*, 346 F.3d at 522 (quoting Fed. R. Civ. P. 56(e)).

When both parties file motions for summary judgment, "the role of the court is to 'rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." *Bryant v. Better Bus. Bureau of Greater Md., Inc.*, 923 F. Supp. 720, 729 (D. Md. 1996) (quoting *Towne Mgmt. Corp. v. Hartford Acc. and Indem. Co.*, 627 F. Supp. 170, 172 (D. Md. 1985)). "Cross-motions for summary judgment do not automatically empower the court to dispense with the determination of whether questions of material fact exist." *Id.* (quoting *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt*, 700 F.2d 341, 349 (7th Cir. 1983), *cert. denied*, 464 U.S. 805 (1983). "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw

all reasonable inferences against the party whose motion is under consideration." *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987).

## III.    DISCUSSION

### A.  Failure to Accommodate

In Counts I and IV of her Complaint, Plaintiff claims that Defendants violated the Rehabilitation Act and the MFEPA, respectively, by denying Plaintiff reasonable accommodations when Ms. Kennedy allegedly imposed grant agreement drafting assignments on Plaintiff.

In *Reyazuddin v. Montgomery Cnty., Maryland*, the U.S. Court of Appeals for the Fourth Circuit summarized relevant provisions of the Rehabilitation Act as follows:

> Section 504 of the Rehabilitation Act mandates that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C.A. § 794(a). Relevant to this appeal, Section 504 defines "program or activity" as "all of the operations of ... a department ... of a State or of a local government."[ ] *Id.* § 794(b)(1)(A).
>
> Employment discrimination claims brought under Section 504 are evaluated using the same standards as those "applied under [T]itle I of the Americans with Disabilities Act of 1990." *Id.* § 794(d). Of significance here, Title I prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability" by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [a] covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A) (2012). A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8).

789 F.3d 407, 413–14 (4th Cir. 2015).

Similarly, under MFEPA, it is an "unlawful employment practice" for an employer to "fail or refuse to make a reasonable accommodation for the known disability of an otherwise qualified employee . . . ." Md. Code Ann., State Gov't §§ 20-606(a)(4), 20-1001. "Both the Rehabilitation Act and [MFEPA] apply the same standards as the ADA." *Miller v. Maryland Dep't of Nat. Res.*, 813 F. App'x 869, 874 (4th Cir. 2020) (citing *Hooven–Lewis v. Caldera*, 249 F.3d 259, 268 (4th Cir. 2001); *see also George v. Md. Dep't of Corr. Serv. Div. of Pretrial Det. Serv.*, Civ. No. WMN-14-2808, 2015 WL 847416, at *4 n.5 (D. Md. Feb. 25, 2015), *aff'd*, 615 F. App'x 164 (4th Cir. 2015)).

To establish a prima facie case for failure to make reasonable accommodations in the workplace, a plaintiff must show: "(1) that [s]he was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of h[er] disability; (3) that with reasonable accommodation [s]he could perform the essential functions of the position; and (4) that the employer refused to make such accommodations." *Wilson v. Dollar General Corp.*, 717 F.3d 337, 345 (4th Cir. 2013) (citation modified). Once Plaintiff makes a prima facie case, an employer may avoid liability "if it can show as a matter of law that the proposed accommodation will cause undue hardship in the particular circumstances." *Reyazuddin*, 789 F.3d at 414 (quoting *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 464 (4th Cir.2012), and *U. S. Airways v. Barnett*, 535 U.S. 391, 401–02 (2002)) (internal quotation marks omitted). "[A]t the summary judgment stage, the employee need only show that an accommodation seems reasonable on its face, and then the employer must show special (typically case-specific) circumstances that demonstrate undue hardship." *Id.* (quoting *Barnett*, 535 U.S. at 401–02) (internal quotation marks omitted).

Here, even viewing the facts in the light most favorable to Defendants, Plaintiff fails to establish a prima facie case for Defendants' failure to accommodate. Defendants do not dispute

that Plaintiff is a "qualified individual with a disability" under the Rehabilitation Act and the MFEPA. 29 U.S.C.A. § 794(a); *see also* Md. Code Ann., State Gov't § 20-606(a)(4). And there is no genuine dispute that Defendants had notice of Plaintiff's disability, that Plaintiff requested reasonable accommodations, or that Plaintiff "could perform the essential functions of [her] position" with reasonable accommodations. *Wilson*, 717 F.3d at 345; *see also* ECF Nos. 43-7, 43-8, 54-5, 54-6, 54-7. Defendants maintain, however, that Plaintiff fails to establish that she was denied reasonable accommodations. The Court agrees.

First, as Defendants point out, Plaintiff admits that she was provided accommodations, as reflected in the Accommodations Agreement and Plaintiff's deposition testimony and interrogatory responses. ECF No. 43-4 at 54; ECF No. 43-8; ECF No. 43-15. The Accommodations Agreement dated May 19, 2020, confirms that Defendants approved Plaintiff for several accommodations, including "[r]emoval of marginal tasks" from Plaintiff's work assignments. ECF No. 43-8 (Def. Ex. 5). The parties agreed to these accommodations, and there is no dispute as to their reasonableness.

Second, there is no competent evidence that Plaintiff was denied the reasonable accommodations to which she agreed in the letter. Plaintiff's assertion that Ms. Kennedy directed her to perform the marginal task of drafting grant agreements lacks support in the record evidence. To support this assertion, Plaintiff primarily relies upon an exchange of emails between her and Ms. Kennedy on September 14, 2020, ECF No. 54-9 (Pl. Ex. 9), and uncertified responses to interrogatories propounded by Defendants in discovery, ECF No. 54-8 (Pl. Ex. 8). In the email exchange, Ms. Kennedy asked Plaintiff to "*prepare* the grant agreement listing St. Elizabeth School Foundation, Inc., as beneficiary." ECF No. 54-9 (Pl. Ex. 9) (emphasis added). In response, Plaintiff objected that "marginal tasks were removed from [her] duties" and that "*drafting* grant

agreements were removed from [her] duties as an accommodation . . . ." *Id.* (emphasis added). The parties have stipulated that the distinction between "preparing" grant agreements and "drafting" grant agreements is a meaningful one. The task of "drafting" a grant agreement involved entering information into an electronic form that took 10 to 20 minutes to complete, while "preparing" a grant agreement involved a "wide series of tasks" and was distinct from "drafting" grant agreements. ECF No. 54-3 (Pl. Ex. 3) at 27:23–28:10. There is no stipulation nor any competent evidence in the record that "preparing" grant agreements was a marginal task for Plaintiff or that Plaintiff was excused from "preparing" grant agreements as an agreed-upon accommodation. Thus, the email exchange between Plaintiff and Ms. Kennedy fails to show that Defendants refused to provide any reasonable accommodation.

Plaintiff claims in an unverified interrogatory response that Ms. Kennedy threatened to terminate her employment if she refused to accept the assignment of "drafting" grant agreements. ECF No. 54-8 (Pl. Ex. 8) at 4, 11. But Plaintiff's interrogatory responses lack proper certification, *see id.* at 11 (declaration page with a blank signature line for Plaintiff), and, therefore, shall not be accepted as competent evidence for purposes of summary judgment. Rule 33(b)(3) of the Federal Rules of Civil Procedure requires that responses to interrogatories be made "in writing under oath[,]" and Rule 33(b)(5) requires that "[t]he person who makes the answers" to "sign them[.]" Rule 56(c)(1) permits "[a] party asserting that a fact cannot be or is genuinely disputed" to support that fact by citation to record evidence, including stipulations and interrogatory answers. Fed. R. Civ. P. 56(c)(1)(A). "Still, in order to be considered on a motion for summary judgment, a party's interrogatory answers, as with other forms of evidence, must still be admissible under the Federal Rules of Evidence." *Planmatics, Inc. v. Showers*, 137 F. Supp. 2d 616, 621–22 (D. Md. 2001), *aff'd*, 30 F. App'x 117 (4th Cir. 2002) (citing *Rohrbough v. Wyeth Lab'ys, Inc.*, 916 F.2d 970, 973

(4th Cir. 1990)). Without Plaintiff's attestation, and without stipulation of the parties, Plaintiff's interrogatory responses are simply unreliable[4] and will be considered neither in opposition to Defendant's summary judgment motion nor in support of Plaintiff's motion. *See Kincaid v. Anderson*, 681 F. App'x 178, 181 (4th Cir. 2017) (finding no abuse of discretion in district court's refusal to accept, for summary judgment purposes, interrogatory responses that "were not properly attested[]"). Plaintiff cannot rely upon her uncertified interrogatory responses.[5]

In her brief, Plaintiff states that she "explained during her deposition that when she spoke with Ms. Kennedy on September 14, 2020, Ms. Kennedy threatened to fire her if [Plaintiff] did not draft the grant agreements." *Id.* But Plaintiff does not cite to any particular page or lines of her deposition transcript, and the Court did not find any testimony about Mr. Kennedy threatening to fire Plaintiff in the excerpted deposition transcript attached to the parties' motion papers. *See* ECF No. 43-4 (Def. Ex. 1); ECF No. 54-1 (Pl. Ex. 1).

In sum, Plaintiff fails to present competent evidence that Defendants refused to make reasonable workplace accommodations. The Accommodations Agreement and Plaintiff's own admissions show that Defendants provided reasonable accommodations after she requested them. Whether the record is viewed in the light most favorable to Plaintiff or Defendants, there is no

---

[4] The Court notes that several of Plaintiff's interrogatory responses are plainly contradicted by other evidence in the record. Plaintiff claims in multiple responses that Ms. Kennedy assigned Plaintiff the task of "drafting grant agreements *post September 2020*." ECF No. 54-8 (Pl. Ex. 8) at 5 (emphasis added). Specifically, Plaintiff claims that "Ms. Kennedy made about 10–15 such assignments on a weekly basis *after September 2020* and continued to violate the terms of [the] May 2020 ADA Accommodation Agreement until such time as [Plaintiff] was forced to take FMLA leave[,]" *id.* at 7 (emphasis added), which Plaintiff began taking on December 7, 2020, ECF No. 54-14 (Pl. Ex. 14, timesheet). But it is undisputed, and established by timesheets in the record, that Ms. Kennedy's last day working at DGS was September 21, 2020. *See* ECF No. 43-16 (Def. Ex. 13, timesheet); ECF No. 54 at 16 (Plaintiff admitting that Ms. Kennedy's last day of work at DGS was September 21, 2020).

[5] The Court notes that *both* parties attach a copy of Plaintiff's uncertified interrogatory responses to their motion papers. *See* ECF No. 43-15 (Def. Ex. 12); ECF No. 54-8 (Pl. Ex. 8). But only Plaintiff presents the unverified responses as proof of facts stated therein. Defendant cites them only to delineate Plaintiff's *allegations*. *See* ECF No. 43-1 (Def. Mem.) at 9, 10.

genuine dispute that Plaintiff was not denied the accommodations listed in the Accommodations Agreement. Therefore, her failure-to-accommodate claims fail as a matter of law, and summary judgment must be entered in favor of Defendants on Counts I and IV.

### B. Harassment

Counts II and V of the Complaint allege that after she submitted a request for reasonable accommodations, Ms. Kennedy subjected Plaintiff to discriminatory harassment in violation of the Rehabilitation Act and the MFEPA, respectively. Defendants move for summary judgment on these claims, and Plaintiff does not appear to oppose this portion of Defendants' motion.

To state a *prima facie* claim for hostile work environment or harassment, a plaintiff must allege that the "conduct of the employer: (1) was unwelcome; (2) resulted because of her gender, race, disability, or prior protected status; (3) was sufficiently severe or pervasive to alter the conditions of her employment; and (4) was imputable to her employer." *Prosa v. Austin*, Civ. No. ELH-20-3015, 2022 WL 394465, at *35 (D. Md. Feb. 8, 2022) (citing *Pueschel v. Peters*, 577 F.3d 558, 565–66 (4th Cir. 2009)) (citation modified). "As for the third element, harassment is considered sufficiently severe or pervasive to alter the terms or conditions of the employment if a workplace is 'permeated with discriminatory intimidation, ridicule, and insult.'" *Pueschel*, 577 F.3d at 565 (citation omitted). The "severe or pervasive" requirement has both subjective and objective components. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993); *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 207–08 (4th Cir. 2019); *Strothers v. City of Laurel*, 895 F.3d 317, 331 (4th Cir. 2018). A plaintiff "must clear a high bar in order to satisfy the [objective] severe or pervasive test." *Perkins*, 936 F.3d at 208. "[W]hen determining whether the harassing conduct was objectively severe or pervasive," a court considers "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a

mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315–16 (4th Cir. 2008)). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). And "complaints premised on nothing more than rude treatment by [coworkers], callous behavior by [one's] superiors, or a routine difference of opinion and personality conflict with [one's] supervisor, are not actionable under Title VII." *Sunbelt Rentals*, 521 F.3d at 315–16 (citation modified).

The record before the Court is devoid of any competent evidence that Ms. Kennedy subjected Plaintiff to "sufficiently severe or pervasive to alter the conditions of her employment" or that any unwelcome treatment she received was based on her disability. *Pueschel*, 577 F.3d at 565. Defendants' motion for summary judgment shall be granted on Counts II and V.

## C. Retaliation

In Counts III and VI, Plaintiff alleges that after she submitted a request for accommodations, Ms. Kennedy retaliated against her in violation of the Rehabilitation Act and the MFEPA, respectively, threatening to fire her if she refused assignments to "draft" grant agreements. As previously stated, both the Rehabilitation Act and the MFEPA apply the same standards as the ADA. *Miller*, 813 F. App'x at 874.

To establish a prima facie case of retaliation under the ADA, in the absence of direct evidence, a plaintiff must show that "(1) that [s]he engaged in protected activity, (2) that the [employer] took an adverse action against h[er], and (3) that the adverse action was causally connected to h[er] protected activity. *S.B. ex rel. A.L. v. Bd. of Educ. of Harford Cnty.*, 819 F.3d 69, 78 (4th Cir. 2016). For purposes of a retaliation claim, the employer's adverse action must be

"materially adverse"—that is, sufficiently adverse to dissuade a reasonable employee from engaging in activities protected by the statute. *Dones v. Brennan*, 147 F. Supp. 3d 364, 370–71 (D. Md. 2015). Requesting accommodation is a protected activity. *See Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 577 (4th Cir. 2015).

Defendants argue that Plaintiff cannot establish a prima facie case of retaliation because there is no record evidence that she suffered any adverse action. The Court agrees. Plaintiff's retaliation claim relies upon her allegation that Ms. Kennedy threatened to terminate her employment if she refused to comply with grant agreement drafting assignments. ECF No. 54 at 23–24. But the only evidence Plaintiff presents to show that this threat was made is her own uncertified interrogatory responses. *Id.* at 8. Plaintiff states in her brief that she testified about Ms. Kennedy threatening to fire her in her deposition, *id.*, but, as noted in Part III.A *supra*, Plaintiff does not cite her deposition transcript to support this fact, and the Court could not locate the relevant testimony among the excerpts of the transcript attached to the parties' motions. *See* ECF No. 43-4 (Def. Ex. 1); ECF No. 54-1 (Pl. Ex. 1). Lacking competent evidence in the record that Defendant took any materially adverse action against Plaintiff in response to her protected activity, Plaintiff's retaliation claims fail as a matter of law. Summary judgment shall be entered in favor of Defendants on Counts III and VI.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED, and Plaintiff's Cross-Motion for Partial Summary Judgment is DENIED. Plaintiff's Consent Motion to Modify the Scheduling Order is GRANTED *nunc pro tunc*. A separate Order will follow.

_____9/26/25_____                          _____
Date                                        Matthew J. Maddox
                                            United States District Judge

14